**Marie Joseph Franco BOULLE and Lesa Schmidt, Appellants**

v.

**Jean–Raymond BOULLE, Appellee.**

No. 05–06–01365–CV.

Court of Appeals of Texas, Dallas.

May 20, 2008.

Larry R. Veselka, Smyser, Kaplan & Veselka, L.L.P., Justin McKenzie Waggoner, F. Eric Fryar, The Fryar Law Firm, James Edward Leavens, Soape & Associates, Houston, Rod Phelan, Baker & Botts,

L.L.P., Dallas, Edward Dangel III, Dangel & Mattchen, LLP, Boston, MA, for Appellant.

Mark S. Werbner, Sayles-Werbner, P.C., Edward Wayne Malouf, Law Office of Edward Wayne Malouf, P.C., F. Leighton Durham, Kirk L. Pittard, Durham & Pittard, LLP, Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and WRIGHT.

## OPINION

Opinion by Justice MORRIS.

This appeal arises from a lawsuit between two brothers after the dissolution of their relationship as business partners. Marie Joseph Franco Boulle and Lesa Schmidt sued Jean–Raymond Boulle alleging, among other things, that they were owed money under a certain written agreement after Jean received millions of dollars in connection with the discovery of a large nickel deposit in Canada. After a jury trial, the trial court rendered judgment that appellants take nothing on their claims. Appellants now appeal from the trial court's take-nothing judgment, challenging the legal and factual sufficiency of the evidence to support the jury verdict and several of the trial court's evidentiary rulings. They also complain about the conduct of appellee's counsel during trial. Concluding that appellants have failed to establish any reversible error, we affirm the trial court's judgment.

### I.

This is the second time this case has been before us. *See Boulle v. Boulle,* 160 S.W.3d 167 (Tex.App.-Dallas, 2005, pet.denied.). Because the events surrounding the parties' agreement are largely undisputed and unnecessary to the disposition of this appeal, we will not give again a detailed account of the complex business transactions leading up to and following the agreement at issue.[1] We limit our recitation of the facts to those relevant to the legal issues presented by this appeal. Moreover, because appellant Lesa Schmidt's five percent interest under the agreement is derived directly from Franco Boulle's assignment to her of that interest, we will not discuss it separately.

After a number of years of working together as business partners, primarily in diamond exploration ventures, Franco and Jean had a falling out and decided to part ways. In 1992, they signed an agreement that transferred to Jean any interest Franco may have had in certain entities and projects in exchange for Jean's payment of $45,000 and his assumption of all of Franco's liabilities and obligations related to the transferred entities and projects. The agreement also assigned Franco "a five percent (5%) interest in the net revenues received by Jean Boulle from the projects in which Franco Boulle transfers his interest to Jean Boulle under this agreement, with a maximum of $5,000,000 to be paid pursuant to this provision."

In 1993, Jean entered into a "vend-in" agreement with a publicly-traded Canadian company later known as Diamond Fields Resources, Inc. Pursuant to the vend-in agreement, Jean received shares and warrants in DFR in exchange for his contribution of stock from certain mining ventures and mining leases. The ventures and leases Jean contributed included interests Franco had transferred to Jean pursuant to the 1992 agreement. DFR later purchased exploration leases in Canada that resulted in DFR discovering one of

---

1. Additional information on the transactions and entities involved in this dispute appear in our previous opinion. *Boulle,* 160 S.W.3d at 170–72.

the world's largest nickel deposits. The discovery caused DFR's stock price to skyrocket. In 1996, a Canadian mining company acquired DFR's nickel assets. DFR's diamond assets, however, including those that Jean contributed to DFR pursuant to the vend-in agreement, were placed into a newly created publicly-traded company called Diamond Fields International. As a result of the acquisition of DFR's nickel assets, DFR shareholders, including Jean, received stock in the Canadian mining company then valued at millions of dollars.

In 1998, Franco, together with Lesa Schmidt, sued Jean claiming they were entitled to $5 million under the five-percent provision of the 1992 agreement, based on the net revenues Jean received from the acquisition of DFR's nickel assets. Specifically, they contended the mining company stock Jean received from the acquisition of DFR's nickel assets triggered Jean's obligations under the five-percent provision because Jean originally obtained DFR stock in exchange for vending-in projects in which Franco had transferred his interest under the 1992 agreement. Jean denied he owed appellants anything, asserting the five-percent provision only required payment if the transferred projects themselves generated net revenues from production.

The trial court initially granted Jean summary judgment. In the first appeal, we reversed and remanded the cause to the trial court for further proceedings. *Id.* at 177. Our disposition of the first appeal was based largely upon our conclusion that the five-percent provision was ambiguous and, thus, its meaning could not be determined as a matter of law. *Id.* at 173–174. On remand, the case was tried to a jury, which found that Jean did not breach the five-percent provision or commit fraud.

This appeal is from the trial court's judgment based on the jury verdict.

## II.

Appellants initially challenge the legal and factual sufficiency of the evidence to support the jury's finding that appellee did not breach the five-percent provision. Appellants contend that because appellee produced no evidence to support his interpretation of the five-percent provision, their interpretation, which was supported by numerous witnesses addressing the parties' intent and other evidence, was established as a matter of law.

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must show the evidence establishes, as a matter of law, all vital facts in support of the desired finding. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The ultimate question is whether the evidence, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, would permit reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. When the party also complains about the factual sufficiency of the evidence, it must show the adverse finding is so contrary to the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242.

Appellants presume that because the jury found against them on the breach of contract issue, it necessarily rejected their interpretation of the five-percent provision. Appellants further argue that, because we concluded in the previous appeal that the

five-percent provision was ambiguous, appellee was required to put on extrinsic evidence of the parties' intent at trial. They contend appellee's failure to do so established, as a matter of law, appellants' interpretation and conclusively established appellee breached the agreement. We do not agree.

The pivotal issue is whether, under the five-percent provision, appellants are entitled to a portion of what appellee received as a result of the nickel discovery based on appellee's earlier vend-in contributions to DFR. The trial court instructed the jury to decide the meaning of the five-percent provision by determining the intent of the parties at the time of the agreement. In making its determination, the jury had before it the agreement itself, as well as testimony from Jean that the vend-in transaction was not contemplated in the agreement and that he was only obligated to pay Franco if he received net revenue from the production of minerals from the projects Franco had transferred. Jean also testified there was not much discussion about the $5 million provision because "Franco just wanted to go off—he wasn't concerned." Accordingly, appellee did in fact submit evidence to support his interpretation.

Appellants, on the other hand, provided testimony from Franco and other witnesses indicating the agreement required Jean to pay Franco five percent of anything of value he received from the projects after deducting the associated costs. Specifically, appellants' witnesses indicated the five-percent provision necessarily included the stock Jean received in the DFR vend-in. They also provided several initial drafts of the agreement that they contend supported their interpretation.

The jury also heard evidence about the facts and circumstances surrounding the making of the agreement, the nature of the parties' business, and the parties' conduct before and after the agreement was signed. There was testimony that the parties' business involved acquiring interests in properties that had possible or potential ore bodies and developing them into a proven or possibly proven ore body at which time the project would be sold or perhaps joint-ventured to a mining operator. Thus, the jury could reasonably conclude "net revenues ... from the projects" required a direct nexus between the value Jean received as a result of a transferred project's value as a proven ore body. There was also evidence that Jean paid Franco $45,000 after the agreement was executed, and Franco was relieved of all liability for the debts associated with the transferred projects. Franco then moved to Mexico and did not speak with his brother again until 1997 when the two ran into each other at a developer's conference in Toronto, Canada. At that time, Jean denied he had any obligation to Franco under the agreement. These facts could also suggest that the five-percent provision was not applicable to income received as a result of an ore discovery on property in which Franco was never involved.

It is undisputed that no valuable minerals or proven ore bodies were ever found on the projects Franco transferred to Jean under the agreement. In fact, after the Canadian mining company acquired DFR's nickel asset, the diamond projects Jean initially contributed to DFR were spun off into a new company that later determined all of the projects except one were not commercially viable. There was likewise no evidence that the remaining project ever developed a proven or possibly proven ore body from which Jean received net revenues.

■ Based on the record before us, we conclude the evidence was legally and factually sufficient to support the jury's ver-

dict. In reaching this conclusion, we necessarily reject appellants' argument that appellee's interpretation of the five-percent provision was unreasonable because it rendered his obligation under the provision illusory. Relying on our holding in *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, appellants assert that, considering the nature of the parties' business, Jean's interpretation would permit him the unilateral option to sell a project outright and thus avoid his obligations under the five-percent provision. 205 S.W.3d 46 (Tex.App.-Dallas 2006, pet. denied). We have already concluded in our previous opinion that appellee's interpretation was not unreasonable. *Boulle*, 160 S.W.3d at 173. The evidence presented at trial has not altered our view. Jean testified at trial that, had any minerals been discovered on any of the projects in which Franco had transferred his interest, he would have been obligated and happy to pay Franco five percent of any net revenue he received as a result of any discovery. In fact, appellants acknowledge in their brief that "it was possible that the jury decided that the five-percent provision encompassed revenue from the project but that Jean's receipt of [the Canadian mining company] stock and what happened thereafter did not count." They argue, however, that we may not presume that this is what happened. Based on the evidence before it, however, the jury could very well have determined that Jean's receipt of stock as a result of the nickel discovery was not covered under the five-percent provision. Such a determination would have had evidentiary support in the record and comport with the jury's finding that appellee did not fail to comply with the five-percent provision. We therefore resolve appellants' legal and factual sufficiency issues against them.

## III.

 Appellants next challenge the trial court's exclusion of testimony from their expert witnesses Lawrence Ranallo and John Webster about the meaning of the term "net revenues" as used in the five-percent provision. We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). We may not reverse a judgment on the basis of evidentiary error, however, unless we conclude the error probably caused rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989).

 The excluded expert testimony indicated "net revenues" encompassed all forms of net monetary return Jean enjoyed from the transferred projects, whether derived from mining operations, the sale of the project as an asset, or the sale of property for which the project was previously exchanged. The experts based their opinions on accounting definitions and experience in the mining business. Neither expert, however, had any involvement in negotiating or drafting the parties' agreement and neither had any personal knowledge with respect to what the parties intended at the time they entered into the agreement. Moreover, there was nothing in the record to suggest the parties used or were even aware of the technical accounting definition of "net revenues" at the time they entered into the agreement. In fact, Alex Budzinsky, the drafter of the agreement, testified that he did not utilize definitions provided by generally accepted accounting principles or federal income tax regulations. Simply stated, the expert testimony was not relevant to the ultimate issue before the jury, namely what meaning the parties intended for the term "net

revenues." Accordingly, the trial court properly excluded this expert testimony as not relevant to the issue of the parties' intent. *See* Tex.R. Evid. 402.

■ Moreover, even if we were to assume the expert testimony was relevant and its exclusion was error, appellants have not demonstrated how that error probably resulted in an improper judgment. A trial court's error in excluding evidence requires reversal if the evidence "is both controlling on a material issue and not cumulative." *Mentis v. Barnard,* 870 S.W.2d 14, 16 (Tex.1994). There is nothing in the record to suggest expert testimony was necessary to determine the meaning of "net revenues." In fact, Franco and Budzinsky, both of whom were involved in the actual negotiation and drafting of the agreement, testified that "net revenues" as used in the five-percent provision was a very broad term that included anything of value that Jean received as a result of the projects minus expenses associated with the project and was not limited to amounts Jean received from production. Because the expert testimony was not controlling and merely cumulative of other evidence, appellants have not demonstrated that its exclusion probably resulted in an improper judgment.[2] Accordingly we resolve this issue against them.

■ In a single paragraph, appellants also complain about the trial court's exclusion of certain testimony from Lydia Tal-

mers and Max Boulle. Appellants provide no discussion, analysis, or legal authority with respect to why the trial court erred in excluding this evidence or how the exclusion probably resulted in an improper verdict. Also, their appellate brief does not contain a record citation to the testimony of Max Boulle that they claim was improperly excluded. Thus, these collateral evidentiary complaints are not properly presented for our review. *See* Tex.R.App. P. 38.1(h).

■ Appellants also contend the trial court improperly allowed testimony from Franco's former attorney, Steven Malouf, that violated the attorney-client privilege.[3] Appellants specifically challenge Malouf's statement that, as Franco's lawyer in April 1992, when the brothers were dealing with their outstanding debts and liabilities and talking about going their separate ways, he understood that Franco first wanted to make sure creditors were fairly treated and then get out of the business completely by transferring to Jean his mining interests in exchange for Jean's assumption and discharge of certain debts. Again, appellants do not discuss how they were harmed by the admission of this evidence or how its admission probably resulted in the rendition of an improper verdict. Moreover, our review of the record reveals reversal is not warranted on this evidentiary complaint for the following reasons.

2. Appellants also argue that they were harmed by the exclusion of Ranallo's testimony on this subject because it enabled appellee's trial counsel to emphasize Ranallo's lack of an opinion as to the meaning of net revenue twice during closing argument. Appellants assert they did not object to these references because the trial court precluded them from doing so during closing arguments. After reviewing the record, we do not agree that appellants were precluded from objecting to these statements. Thus, their failure to object

results in the waiver of this complaint on appeal. Tex R.App. P. 33.1.

3. Additionally, appellants complain about Malouf's response to their counsel's question, "You do not know what [Jean] said to [Franco] to get him to sign [the agreement] right?" Because no timely objection was made to Malouf's answer, this complaint has been waived on appeal. Tex.R.App. P. 33.1.

First, Malouf's statement had nothing to do with the pivotal question before the jury, namely, what the parties intended with respect to the five-percent provision when they entered into the June 1992 agreement. Malouf's comments were limited to his understanding of Franco's objectives in April 1992, two months before the agreement containing the five-percent provision was signed. In fact, Malouf specifically stated that he did not participate in any discussions about the June 1992 agreement and had no knowledge of what either party intended with respect to the five-percent phrase. Additionally, appellants did not assert a privilege objection to Malouf's later testimony that, in April, he understood Franco was prepared to assign to Jean all of Franco's interests in all of the project in exchange for Jean taking care of the creditors. Finally, there were several witnesses and other evidence that directly addressed the material issue of what the parties intended with respect to the five-percent provision at the time the agreement was made. After reviewing the entire record, we cannot conclude appellants were harmed by the admission of the complained-of testimony. *See Bay Area Healthcare Group, Ltd., v. McShane*, 239 S.W.3d 231, 234 (Tex.2007) (complaining party must demonstrate judgment turned on the particular evidence admitted). We resolve this evidentiary issue against appellants.

### IV.

Appellants also complain about a multitude of "ad hominem" comments made by appellee's counsel during trial. Appellants devote over three pages of their brief listing the purportedly offending comments. Appellants generally assert the comments were designed "to demean witnesses Franco and Lesa Schmidt and focus the case away from the evidence." They contend the comments violated the trial court's order in limine.

It is well settled that a trial court's ruling on a motion in limine preserves nothing for review. A party must object at trial to preserve error on appeal. *See Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963). Our review of the record reveals that appellants made no objections at trial to most of the comments of which they now complain. Appellants did object to the few remaining comments, but it appears the trial court sustained their objections. After their objections were sustained, appellants made no further request of the trial court and appellants have not cited a single complained-of comment to which their objection was improperly overruled. Accordingly, appellants have not preserved their complaints for appellate review. Tex.R.App. P. 33.1.

Even if we reached the merits of appellants' complaints, however, we would not be persuaded the comments present reversible error. Appellants provide no discussion with respect to how these comments violated the trial court's order in limine or how they probably caused rendition of an improper judgment. The single legal authority upon which appellants rely does not support their position. *See Perez v. Kleinert*, 211 S.W.3d 468 (Tex.App.-Corpus Christi 2006, no pet.). *Perez* was a personal injury action arising out of an auto accident where both the driver and her insurance company were sued. *Id.* at 470. The insurer's attorney pretended to be the lawyer for the driver who did not appear at trial. *Id.* at 472. The court of appeals reversed the trial court's judgment concluding the attorney's ploy undermined the jury's fact finding ability. *Id.* at 476. The "ad hominem" comments of which appellants complain are nothing like the ploy in *Perez*, and there is no indication that the

comments interfered with the jury's fact finding ability or probably caused rendition of an improper judgment. We resolve this issue against appellants.

## V.

Finally, in a single paragraph, appellants argue in a conclusory manner that the jury's findings on their fraud claims should also be reversed. Appellants note that this claim is premised on a jury finding that the five-percent provision included gains from the sale, vend-in, or transfer of the projects turned over. Having already concluded the evidence was legally and factually sufficient to support the jury's adverse finding on this issue, appellants' argument with respect to their fraud claims necessarily fails.

We affirm the trial court's judgment.