**QUAKER PETROLEUM CHEMICALS COMPANY, Appellant,**

v.

**Linda Tuttle WALDROP and Jane McCord, Appellees.**

**No. 04–01–00335–CV.**

Court of Appeals of Texas, San Antonio.

March 6, 2002.

Glenn R. LeMay, Theo W. Pinson, Pinson & Associates, P.C., Houston, for Appellant.

Nancy M. Simonson, Canales & Simonson, P.C., Corpus Christi, J. Stuart Fryer, Mullins & Fryer, Terrell S. Mullins, Hallettsville, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and PAUL W. GREEN, Justice.

Opinion by: PAUL W. GREEN, Justice.

Quaker Petroleum Chemicals Company ("Quaker") appeals a jury verdict awarding damages to Linda Tuttle Waldrop and Jane McCord for negligence, gross negligence, and intentional infliction of emotional distress in relation to a chemical spill occurring in Halletsville, Texas. Because the evidence is legally insufficient to support the verdict, we hold the trial court erred in denying Quaker's motion for JNOV, reverse the trial court's judgment as to Waldrop and McCord, and render judgment in favor of Quaker.[1]

### Background

Dave Edmonds stored chemicals for Quaker in plastic drums in a warehouse in Hallettsville. Edmonds allowed Linda and Louis Tuttle, neighbors to the warehouse, to store a meat freezer in the warehouse. When Linda Tuttle went into the warehouse in October 1990, she noticed a sharp smell. She quickly retrieved meat from the freezer and left, but later that day, she went to the emergency room, complaining of respiratory problems. The smell was traced to a leaking plastic drum. After the spill, Quaker representative Rick Talley visited the warehouse. Talley talked to Jane McCord, another neighbor to the warehouse, and told her that if anyone was thinking of suing Quaker over the spill, Quaker would countersue. Talley made similar comments to Linda. Talley paid Linda and her husband for medical bills and inconvenience after they signed a let-

ter stating they would not bring suit for damages directly or indirectly related to the spill.

Four months later, while Jane was at a church Valentine's Day party, she overheard Edmonds discussing with another parishioner how things would go a lot more smoothly if "there wasn't a lot of sue-happy people around." After these comments and others like them, Jane and her husband spoke to the preacher, who advised them to change religion classes. After Jane's brother-in-law died and her son was diagnosed with a serious illness, she asked that her family's name be added to the church prayer list. After she made the request, Edmonds told Jane that "when bad things happen to good people, it's because they're not living their life right and that it's a punishment from God." After the comments, Jane and Linda, along with their families, joined new churches because "Mr. Edmonds was a gossip person, he—he was worse than a woman. But his voice was loud and it was big and he was in good with the preacher, so he just put—put all of us down and just got real ugly and they were spreading rumors and it was just—it hurt a lot." In October 1992, the families brought suit against Quaker alleging negligence for the spill. Two years later, they amended their petition to add the claim of intentional infliction of emotional distress (IIED), relying on the statements made by Talley and Edmonds.

At trial, the jury found Quaker liable to Linda for negligence and gross negligence. The jury also found Quaker liable to Linda, Jane, and Jane's son for IIED.[2] Quaker

---

**1.** The trial court entered a take-nothing judgment against five other plaintiffs, Charles T. Wells, Mona Wells, Louis Tuttle, and Dwight McCord, individually and as next friend of Dillon McCord, which has not been appealed.

**2.** The jury awarded Linda actual damages in the amount of $60,000.00 and exemplary damages in the amount of $300,000.00, which was reduced to $200,000.00 to comply with the statutory cap. The jury awarded Jane $65,000.00 in actual damages. The trial

appeals, arguing the trial court erred in denying its motion for JNOV.[3]

### Sufficiency of the Evidence

■ Quaker claims the trial court erred in denying its motion for JNOV because the evidence is legally insufficient to support the jury findings of negligence, gross negligence, and IIED. Texas Rule of Civil Procedure 301 provides that a court may render JNOV if a directed verdict would have been proper and may disregard any jury finding that has no support in the evidence. Therefore, a JNOV should be entered when the evidence is conclusive and one party is entitled to judgment as a matter of law. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990).

■ We review the denial of a motion for JNOV under a legal sufficiency standard, meaning we review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences that support them and disregarding all evidence and inferences to the contrary. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of evidence to support the findings, the motion for JNOV was properly denied. *Mancorp*, 802 S.W.2d at 228. Only if there is no evidence to support the jury's findings must we examine the entire record to see if the contrary position is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

### A. Negligence & Gross Negligence

■ To sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998). To sustain a gross negligence claim, the plaintiff must demonstrate: (1) the act or omission complained of, viewed objectively from the actor's standpoint, must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994). Importantly, if there is insufficient evidence to support a negligence claim, then a claim based on gross negligence must also fail. *Southwestern Bell Mobile Sys. v. Franco*, 971 S.W.2d 52, 55 (Tex.1998); *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996).

■ Further, a claim for past medical care must be supported by evidence that such expenses were reasonably necessary as a result of the injury suffered. *Carr v. Galvan*, 650 S.W.2d 864, 868 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.). Although expense statements constitute evidence of actual medical costs, such statements, alone, are not evidence of the reasonableness of the expense.[4] The jury

---

court denied Quaker's motion for JNOV and entered judgment, omitting a damages award to Dillon, Jane's son.

3. Quaker argues JNOV was proper because: (1) there is no evidence supporting Linda's negligence claim; (2) there is no evidence supporting Linda's or Jane's IIED claims; (3) the IIED claims are barred by the statute of

limitations; and (4) Linda's claims are barred by release.

4. *Id.* While proof that the bills were paid may constitute some evidence as to the necessity of the medical fees, such evidence does not demonstrate proof of reasonableness of the fees. *Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Waltz v. Waltz*, 776 S.W.2d 320,

found Quaker liable to Linda for negligence and gross negligence, awarding her $50,000.00 for past medical care.[5] Quaker argues that although Linda presented medical records and testified regarding her injuries, she offered no evidence demonstrating the medical expenses were reasonable and necessary.

■ Regarding medical expenses, Linda offered her own testimony and the medical records reflecting treatment and payment of the bills. We hold this evidence is legally insufficient to demonstrate the treatment was reasonable and necessary, and as such, we reverse the judgment against Quaker on Linda's negligence claim. Further, because an exemplary damages award cannot stand in the absence of actual damages, we reverse the judgment against Quaker on Linda's gross negligence claim. *Southwestern Bell Mobile Sys.*, 971 S.W.2d at 55. We sustain Quaker's issues one and two.

## B. Intentional Infliction of Emotional Distress

■ The trial court also denied Quaker's motion for JNOV as to the IIED claims brought by Linda and Jane. To sustain an IIED claim, a plaintiff must prove: (1) the acts were intentional or reckless; (2) the conduct was extreme and outrageous; (3) the acts caused the plaintiff emotional distress; and (4) the distress suffered was severe. *Bradford v. Vento,*

48 S.W.3d 749, 758 (Tex.2001). The threshold issue for the trial court is whether the conduct in question may reasonably be regarded as extreme and outrageous.[6]

■ In recognizing the IIED claim, the supreme court adopted section 46 of the RESTATEMENT:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965); *Twyman,* 855 S.W.2d at 621–22. Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[7] Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct. *GTE Southwest, Inc.,* 998 S.W.2d at 612; *Schauer v. Mem'l Care Sys.,* 856 S.W.2d 437, 451 (Tex.App.-Houston [1st Dist.] 1993, no writ).

■ Linda and Jane sought IIED damages based on the comments made by Quaker employees and on the chemical spill, itself. Although we do not comment

322 (Tex.App.-Houston [1st Dist.] 1989, no writ) (holding that the plaintiff's testimony regarding medical treatment, along with evidence that insurer paid medical bills constituted an implied finding of the necessariness of medical fees, but no evidence of the reasonableness of the fees).

**5.** Linda was awarded $50,000.00 for past medical expenses arising from the negligence claim and $10,000.00 for physical pain and mental anguish arising from the IIED claim.

**6.** *Id.; Brewerton v. Dalrymple,* 997 S.W.2d 212, 216 (Tex.1999) (citing *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993)). It is initially for the trial court to decide whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 616 (Tex.1999).

**7.** *Brewerton,* 997 S.W.2d at 216; *City of Midland v. O'Bryant,* 18 S.W.3d 209, 217 (Tex. 2000).

on the appropriateness of Talley's and Edmonds's conduct, we cannot hold that their statements rise to the level of extreme and outrageous conduct. *See Morgan v. Anthony*, 27 S.W.3d 928, 930–31 (Tex.2000). Further, an IIED claim based on Quaker's handling of the spill fails for lack of intentionality. *O'Bryant*, 18 S.W.3d at 217; *Standard Fruit & Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex.1998); In *Johnson*, the Texas Supreme Court held that a plaintiff could not recover damages for IIED after witnessing a truck driver drive a tractor-trailer rig into a parade:

> [W]e hold that a claim for intentional infliction of emotional distress cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort. In the present case, Marshall's conduct, even if reckless, involved a primary risk of physical injury or death. To the extent it also involved a risk that others would suffer only emotional distress, Texas permits recovery under the limitations imposed by courts for public policy reasons, such as bystander recovery.

*Johnson*, 985 S.W.2d at 68. The court emphasized that IIED is a "gap-filler" tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines. *Id.* To allow Linda and Jane to recover IIED damages based upon the chemical spill would circumvent the limitations placed on the recovery of mental anguish damages on a negligence or gross negligence claim. *See id.* We sustain Quaker's third issue.

### Conclusion

Because the evidence is legally insufficient, we hold the trial court erred in denying Quaker's motion for JNOV on the findings of negligence, gross negligence, and IIED against Quaker. We sustain Quaker's first three issues on appeal and render judgment in favor of Quaker that Linda and Jane take nothing on their claims against Quaker. We need not reach Quaker's remaining issues.