Michael C. MEWHINNEY, Appellant,

v.

The LONDON WINEMAN,
INC., Appellee.

No. 05–09–01057–CV.

Court of Appeals of Texas,
Dallas.

March 22, 2011.

Rehearing Overruled April 28, 2011.

Mark H. How, Mark Frels, How, Frels, Rohde, Woods & Duke, P.C., Dallas, TX, for Appellant.

Richard A. Illmer, Brown, McCarroll, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion By Justice MORRIS.

In this appeal from a jury verdict, Michael C. Mewhinney contends the trial court erred in failing to grant his motion for judgment notwithstanding the verdict. Mewhinney generally contends there is no evidence to support the jury's findings and the evidence conclusively established he was entitled to a verdict in his favor. After reviewing the evidence and the arguments on appeal, we conclude the trial court did not err in failing to grant Mewhinney's motion. We affirm the trial court's judgment.

### I.

In 2007, Michael C. Mewhinney decided to sell the contents of his wine cellar. Mewhinney placed advertisements in the Wall Street Journal and Wine Spectator magazine seeking a buyer. Donald Kurtz, president of The London Wineman, Inc., contacted one of Mewhinney's assistants about purchasing some or all of Mewhinney's wine. London Wineman is in the business of purchasing wine from individuals and reselling it through an auction house. Kurtz asked Mewhinney's assistant to send a list of what was available. The list Kurtz received indicated that among the bottles of wine Mewhinney owned were five bottles of 1945 Chateau Mouton Rothschild.

Kurtz arranged to visit Mewhinney's wine cellar to inspect the wines for purchase. Kurtz was joined by Ben Nelson, a representative of the auction house used by London Wineman. Nelson was head of consignment for the auction house, Hart Davis Hart ("HDH"), and dealt with customers who were auctioning wine. Kurtz testified that he asked Nelson to assist him in examining Mewhinney's wine collection solely for the purpose of determining whether any of Mewhinney's wine was in condition for resale. About halfway through examining the contents of Mewhinney's wine cellar, Kurtz and Nelson came across the five bottles of purported 1945 Chateau Mouton Rothschild. After examining the bottles, Nelson noted that one of them looked "different" than the other four. Specifically, he noted that the foil capsule covering the cork appeared newer than the other four bottles. Nelson cut the capsule on the suspect bottle to look through the glass at the cork underneath. The cork on that bottle was branded "1945." In addition, Kurtz and Nelson verified that the "fill level" for all five bottles was appropriate for a 1945 vintage.

After examining all of the wine, Kurtz and Nelson selected the bottles they wished to purchase, including the five bottles of purported 1945 Chateau Mouton Rothschild. The purchase price for the

Mouton Rothschild was $6,000 per bottle. All of the wine they purchased was then shipped directly to HDH.

Approximately two weeks after the wine arrived at HDH, the bottles were inspected again by HDH employee Anthony Sunby. During this second examination, Sunby discovered that the corks in the other four bottles of Mouton Rothschild were branded "1955." Based on this discovery, and some discrepancies in the labeling, Sunby told Nelson and Kurtz that four bottles were not authentic.

Kurtz contacted Mewhinney and told him what Sunby had discovered. Kurtz followed his telephone call with a letter stating that, after some investigation, he believed it was clear the four bottles were counterfeit. Kurtz asked Mewhinney what his position was on the issue. Mewhinney responded that he had "bought the wine in good faith from Chicago Wine Company" and suggested that Kurtz attempt to obtain compensation for the loss from it. Kurtz then sent a second letter stating that, because there had been a "mutual mistake of fact," the proper course was to void the transaction with respect to the four counterfeit bottles. Mewhinney refused to do so.

The London Wineman sued Mewhinney alleging claims for breach of contract, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act. Mewhinney moved for summary judgment on the London Wineman's claim for breach of contract and the trial court granted the motion. The remaining claims were tried to a jury.

After hearing the evidence, the jury found Mewhinney made a negligent misrepresentation on which the London Wineman justifiably relied. The jury also found in favor of the London Winemen on its DTPA claim concluding that Mewhinney "engaged in [a] false, misleading, or decep-tive act or practice that London Wineman, Inc. relied on to its detriment and that was a producing cause of damages to London Winemen, Inc." The jury assessed $24,000 in damages for each claim. The London Wineman elected to recover under its DTPA claim, which allowed it to recover its attorneys' fees. Mewhinney filed a motion for judgment notwithstanding the verdict that the trial court denied. The court then signed a final judgment awarding the London Wineman $24,000 in damages plus prejudgment interest, $60,000 in attorneys' fees, and a conditional award of attorneys' fees in the event of an appeal. This appeal ensued.

II.

In his first three issues on appeal, Mewhinney contends the trial court erred in failing to grant his motion for judgment notwithstanding the verdict because there is no evidence to support the jury's finding that he engaged in a false, misleading, or deceptive act or practice in violation of the DTPA and the evidence conclusively shows that he did not. We review the denial of a motion for JNOV under a legal sufficiency standard. See Brown v. Zimmerman, 160 S.W.3d 695, 702 (Tex.App.-Dallas 2005, no pet.). We review the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences that support them and disregarding all evidence and inferences to the contrary. See Quaker Petroleum Chems. Co. v. Waldrop, 75 S.W.3d 549, 553 (Tex.App.-San Antonio 2002, no pet.). If there is more than a scintilla of evidence to support the jury's findings, the motion for JNOV was properly denied. Id.

Mewhinney first argues that the London Wineman's DTPA claim is the same as its breach of contract claim, which was dismissed by summary judgment.

Mewhinney argues that the London Wineman merely retooled its contract claim as a DTPA claim to avoid dismissal. It is well established that a mere breach of contract, without more, does not constitute a false, misleading, or deceptive act in violation of the DTPA. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 304 (Tex.2006). By itself, the failure to perform a promise in an agreement does not constitute a misrepresentation. *See Chilton Ins. Co. v. Pate & Pate Enters., Inc.,* 930 S.W.2d 877, 890 (Tex.App.-San Antonio 1996, writ denied). The determination of whether there has been a misrepresentation sufficient to trigger the DTPA is a fact-driven inquiry. *Id.* After the facts have been ascertained, however, the question of whether they constitute a "DTPA-level misrepresentation" is one of law. *Id.*

Mewhinney contends the evidence conclusively shows that the only representation he made to the London Wineman about the wine at issue was the statement in his written inventory that he owned five bottles of 1945 Chateau Mouton Rothschild. Mewhinney contends this representation became a part of the sales contract and the London Wineman's claim that the goods ordered were not the goods received lies solely in breach of contract. In this case, however, the goods purchased and the goods received were identical. The London Wineman does not contend the bottles of wine shipped to HDH were different from the ones Kurtz selected to purchase while at Mewhinney's house. The claim in this case arises from the fact that the bottles of wine the London Wineman contracted to purchase were not what Mewhinney represented them to be. The London Wineman argues that, but for the representation, the company would not have entered into the contract to buy the four bottles of what it thought was 1945 Chateau Mouton Rothschild. The initial representation was separate from the contract and is actionable under the DTPA. *See Chapa,* 212 S.W.3d at 305 (representation that purchaser would get one model of car when she was going to get another was actionable under DTPA).

Mewhinney further argues that the London Wineman's claim sounds only in contract because the damages claimed were purely economic and the subject of the contract. We disagree. The fact that the damages are "economic" does not mean that they are not recoverable in tort. *See American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990). A tort can produce similar, if not identical, damages to a breach of contract. *See Busse v. Pacific Cattle Feeding Fund No. 1, Ltd.,* 896 S.W.2d 807, 817 (Tex.App.-Texarkana 1995, writ denied). The jury awarded the London Wineman its out-of-pocket damages, which is measured by the difference between the amount the company paid and the value it received. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997). This is an appropriate measure of damages under the DTPA. *Id.* As stated above, the London Wineman does not assert in its DTPA claim that Mewhinney failed to deliver the wine it contracted to buy. Rather, it asserts that it relied on Mewhinney's misrepresentation about the vintage of the four bottles at issue before it entered into contract to purchase them. It was the misrepresentation that caused the harm rather than a failure to perform under the contract. *Cf. Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex.1996) (claim sounds only in contract where plaintiff alleged defendants "misrepresented" they would perform under the contract). Although the measure of damages under the DTPA claim may have been the same as those sought under the dismissed contract claim,

this alone does not render the London Wineman's DTPA claim invalid.

Finally, Mewhinney argues that there is no evidence to support the jury's finding that he engaged in a "false, misleading, or deceptive act or practice" under the DTPA. Specifically, Mewhinney contends there is no evidence that he substituted another brand of wine for the purported 1945 Chateau Mouton Rothschild or that the wine was not, in fact, 1945 Chateau Mouton Rothschild. Mewhinney notes that the London Wineman never tested the wine itself.

Although a test of the wine may have provided additional evidence, the record is replete with testimony that the wine was not authentic. Anthony Sunby testified that he inspected the four bottles at issue after they arrived at HDH and determined they were "fakes." This determination was based on his observation that the corks in the four bottles were branded "1955" and the labels differed from what would be found on an authentic 1945 Chateau Mouton Rothschild. Sunby testified that the artwork on the labels appeared blotchy, as if the labels had been photocopied. Furthermore, according to Sunby, an authentic 1945 Chateau Mouton Rothschild has a two-part label, whereas the four bottles at issue had only single, undivided labels.

Sunby's testimony was supported by that of Michael Troise, a wine consultant. Troise opined at trial that the four bottles of wine at issue were counterfeit. He testified that his opinion was based primarily on the corks but also that the labels on the subject bottles were not what would be found on authentic bottles of 1945 Chateau Mouton Rothschild. Like Sunby, Troise testified that authentic labels have two parts and the labels on four of the bottles purchased from Mewhinney were all one piece. This testimony provides

more than a scintilla of evidence to show that the wine the London Wineman bought was not the 1945 Chateau Mouton Rothschild the company believed it was purchasing. We resolve Mewhinney's first three points of error against him.

In his sixth, seventh, eighth, ninth, and twelfth issues, Mewhinney contends that there was no evidence the London Wineman relied to its detriment on any alleged false, misleading, or deceptive act or practice or that such act or practice was a producing cause of any damages. Mewhinney also contends the evidence shows conclusively that there was no reliance and no act or practice that was a producing cause of damages to the London Wineman. Mewhinney argues that Kurtz and Nelson's independent inspection of the wine on behalf of the London Wineman conclusively shows that the London Wineman did not rely on any representation by Mewhinney. According to Mewhinney, the independent inspection defeats any claim that his alleged misrepresentation was either relied upon or was a producing cause of damages.

Under certain circumstances, an independent inspection can constitute a new and independent basis for a purchase that intervenes and supersedes a wrongful act by the seller. *See Dubow v. Dragon,* 746 S.W.2d 857, 860 (Tex.App.-Dallas 1988, no writ). For causation to be negated, however, it is critical that the buyer rely exclusively on the independent inspection when deciding to go forward with the purchase. *See Bernstein v. Thomas,* 298 S.W.3d 817, 822 (Tex.App.-Dallas 2009, no pet.). Furthermore, the investigation should be of such a nature as to inform the buyer of the truth and indicate that the buyer was not relying on the information provided by the seller. *See Pleasant v.*

*Bradford,* 260 S.W.3d 546, 554 (Tex.App.-Austin 2008, pet. denied).

In this case, Kurtz testified that he specifically relied on Mewhinney's representation that the wine cellar contained five bottles of 1945 Chateau Mouton Rothschild when he decided to purchase the bottles at issue. Both Kurtz and Nelson testified that the purpose of their pre-purchase inspection was not to determine the authenticity of the wine but rather to determine whether the wine was in sufficient condition for resale by the London Wineman. Kurtz stated that he did not consider Nelson to be an expert on authenticity and he had never dealt with counterfeit wine before. Nelson testified that he examined only the condition of the wine and not its authenticity because authenticity is not generally an issue. Nelson further stated that the only reason he inspected the cork on the fifth bottle of Chateau Mouton Rothschild was because the newer foil capsule on the bottle caught his attention.

This testimony provides more than a scintilla of evidence to show that the London Wineman relied on Mewhinney's representation that the bottles at issue were 1945 Chateau Mouton Rothschild rather than its own inspection of the wine. The pre-purchase inspection was not intended to determine the wine's authenticity. Accordingly, the inspection did not supplant Mewhinney's representations with respect to the provenance and vintage of the wine in his cellar. The scope of the inspection was not sufficient to reveal the truth about the wine.

 Mewhinney argues that he did not restrict the pre-purchase inspection in any way and it was only because Kurtz and Nelson chose not to inspect the bottles at issue more closely that they did not discover they were counterfeit. To the extent Kurtz and Nelson's failure to inspect the wine more closely may be a producing cause of the London Wineman's injuries, there may be more than one producing cause of damages in a case. *See Bernstein,* 298 S.W.3d at 824. This does not mean that the other producing cause or causes are not actionable. *Id.* We conclude the trial court properly denied Mewhinney's motion for judgment notwithstanding the verdict. We resolve Mewhinney's sixth, seventh, eighth, ninth, and twelfth issues against him.

 In his thirteenth and final issue on appeal, Mewhinney contends the trial court erred in awarding the London Wineman the amount it paid for the wine as damages. Mewhinney contends the trial court should have ordered that the sale be rescinded and compelled the London Wineman to return the bottles at issue to him. Mewhinney never requested rescission in his pleadings in the trial court, however. Nor did he request a jury question on the issue. The trial court did not err, therefore, in failing to award unrequested relief. *See Burnett v. James,* 564 S.W.2d 407, 409 (Tex.App.-Dallas 1978, writ dism'd). We resolve Mewhinney's thirteenth issue against him.

Based on the foregoing, it is unnecessary for us to address Mewhinney's remaining issues. We affirm the trial court's judgment in favor of the London Wineman.