**AFFIRM; Opinion Filed January 13, 2022**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

**No. 05-20-00087-CV**

**ANGELINA ARREDONDO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DANIEL CANALES ARREDONDO, DECEASED, AND NEXT FRIEND OF LEIA ARREDONDO, INDIVIDUALLY, Appellant**

**V.**

**JOHN TIMOTHY TRACY, M.D., BAYLOR ALL SAINTS MEDICAL CENTER D/B/A BAYLOR SCOTT & WHITE ALL SAINTS MEDICAL CENTER—FORT WORTH; AND BAYLOR HEALTH CARE SYSTEM D/B/A BAYLOR SCOTT & WHITE HEALTH, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-07257**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Schenck, and Justice Osborne
Opinion by Justice Schenck

Angelina Arredondo, individually and representing the estate of Daniel Canales Arredondo and as next friend of minor Leia Arredondo, appeals the take-nothing judgment on her healthcare liability claims against appellees John Timothy Tracy, M.D., Baylor All Saints Medical Center d/b/a Baylor Scott & White All Saints Medical Center—Fort Worth ("BASMC"), and Baylor Health Care System d/b/a Baylor Scott & White Health ("BHCS"). In two issues, Arredondo argues the

jury charge contained reversible error and the trial court erred in excluding certain evidence. We affirm. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

**BACKGROUND**

Mr. Arredondo was a husband and a father. He and his wife shared a young daughter. During the day, he cared for their daughter while his wife worked, and in the evenings he attended school to complete a certification. He also had an older daughter from a previous relationship, and he was an uncle to a niece and nephew.

On January 15, 2016, Mr. Arredondo began to experience pain in his shoulder, which grew worse throughout the day and evening until he felt compelled to ask his wife to take him to the emergency room. At a little before midnight, Mrs. Arredondo took him to the emergency department of appellee BASMC. A nurse triaged Mr. Arredondo, taking measurements of his vitals, and returned him to the waiting area. Despite that he had described his pain as "10/10," he was not given any pain medication at that time. Although Mrs. Arredondo asked for an x-ray of her husband's shoulder, that x-ray was cancelled at 1:27 a.m. when Mr. Arredondo was unable, due to the pain in his shoulder, to move his arm into a position to allow an x-ray to image his shoulder.[1]

---

[1] The notation from the radiology technologist was that Mr. Arredondo "refuses x ray until pain meds. [An ER doctor not a party here] said to cancel."

–2–

At approximately 2:00 a.m., a second nurse examined Mr. Arredondo and gave him some pain medication. Shortly thereafter, his care was assigned to a physician assistant, Brendan Baird, with appellee Dr. Tracy serving as his attending physician. Mr. Baird examined Mr. Arredondo and prescribed him hydrocodone, acetaminophen, and a muscle relaxant, but his pain remain unchanged. Although Dr. Tracy did not examine Mr. Arredondo, Mr. Baird consulted with Dr. Tracy regarding Mr. Arredondo's symptoms and administration of morphine, which mildly improved in his pain. At approximately 4:30 a.m. on January 16, Mr. Baird diagnosed Mr. Arredondo with neck muscle spasms and discharged him with a prescription for muscle relaxants and instructions to see his primary care physician within the next couple of days.

The Arredondos returned home where Mr. Arredondo's pain worsened and his breathing became labored. On Monday morning, January 18, Mrs. Arredondo took Mr. Arredondo to the emergency department at Baylor Surgical Hospital ("BSH") where he was noted to have difficulty breathing, an elevated heart rate, and chest pain. The BSH physician suspected pneumonia, congestive heart failure, or a pulmonary embolism and determined it was necessary to transfer Mr. Arredondo to BASMC. At BASMC, he was suspected to have sepsis and necrotizing fasciitis. Despite treatment in the intensive care unit and surgery, Mr. Arredondo's condition continued to decline until he died on January 19 from complications of sepsis, specifically methicillin-resistant staphylococcus aureus ("MRSA").

On June 15, 2016, Mrs. Arredondo, individually and representing the estate of Daniel Canales Arredondo and as next friend of her daughter with Mr. Arredondo, filed suit against the appellees, asserting claims for negligence and gross negligence related to defendants' treatment of her husband.[2] On January 28, 2019, trial began but ended in a mistrial with the trial court's rulings from the first trial remaining in force for the second trial. On September 30, 2019, a second trial began, and on October 15, 2019, the case went to the jury. The court's charge submitted only a willful and wanton negligence liability issue instead of the plaintiff's requested issues. Mrs. Arredondo's requested charge was to submit to the jury three distinct questions related to liability: (1) whether "emergency medical care" was provided to Mr. Arredondo; (2) if yes, whether the "willful and wanton negligence" of appellees proximately caused his death; and (3) if no, whether the ordinary negligence of appellees proximately caused his death. Instead, the jury charge included one liability question asking whether the "willful and wanton negligence" of appellees proximately caused the death of Mr. Arredondo, as well as a question asking the jury to determine proportionate share of responsibility of each appellee. Ten out of twelve jurors answered that willful and wanton negligence of the appellees did not proximately cause the death of Mr. Arredondo. Mrs. Arredondo filed a motion for new trial, which was overruled by operation of law. This appeal followed.

---

[2] Mr. Baird and the two nurses who examined Mr. Arredondo were named as defendants but were later nonsuited.

–4–

## DISCUSSION

### I. The Trial Court Did Not Abuse Its Discretion in the Charge

In her first issue, Mrs. Arredondo urges the issue of whether "emergency medical care" was provided to Mr. Arredondo was an issue disputed by the parties and supported with sufficient conflicting evidence that it was error for the trial court to refuse her requested jury charge.

A trial court must submit jury questions, instructions, and definitions "raised by the written pleadings and the evidence." *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021) (citing TEX. R. CIV. P. 278)). Concomitantly, a trial court must not submit claims or affirmative defenses that the pleadings and evidence do not support, unless the parties tried the claim or defense by consent. *Id.* Further, a trial court may refuse to submit a question if there is no evidence in the record to warrant its submission. *Olivares v. Mares*, 390 S.W.3d 608, 616 (Tex. App.—Dallas 2012, no pet.). Within those parameters, we review the trial court's submission of the charge to the jury for abuse of discretion. *Brumley*, 616 S.W.3d at 831.

Section 74.153 of the civil practice and remedies code governs health care liability claims for injuries or deaths arising from the provision of "emergency medical care" in a hospital emergency department, or in an obstetrical unit or surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department. It mandates that, for such claims, the claimant:

> may prove that the treatment or lack of treatment by the physician or
> health care provider departed from accepted standards of medical care

–5–

or health care *only* if the claimant shows by a preponderance of the evidence that the physician or health care provider, *with willful and wanton negligence*, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health care provider in the same or similar circumstances.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.153 (emphasis added). The legislature defined "emergency medical care" as:

bona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part . . . .

*Id.* § 74.001(7).

Thus, the definition encompasses two elements: (1) type of care provided and (2) circumstances under which that care is provided. *See Turner v. Franklin*, 325 S.W.3d 771, 777 (Tex. App.—Dallas 2010, pet. denied). We have interpreted that care to include "any actions or efforts undertaken in a good faith effort to diagnose or treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions." *Id.* at 778.

As for the second element, section 74.001(7) requires that the "bona fide emergency services" must be provided after the sudden onset of a medical or traumatic condition manifested with acute symptoms so severe that "the absence of immediate medical attention *could reasonably be expected*" to result in serious jeopardy to the patient's health, serious impairment to bodily functions, or serious

dysfunction of any bodily organ or part. *See id.* at 777 (emphasis added). The section goes on to exclude "medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency." *Id.* As this Court has previously held:

> [I]t is the severity of the patient's condition, its rapid or unforeseen origination, and the urgent need for immediate medical attention—including diagnosis, treatment, or both—in order to minimize the risk of serious and negative consequences to the patient's health that comprise the second element of the definition of "emergency medical care." The use of the phrase "could reasonably be expected," italicized above, also makes clear that whether the circumstances meet the second element of "emergency medical care" must be viewed prospectively and objectively, not retrospectively or subjectively.

*Id.*

Thus, this Court defined the term "bona fide emergency services" to mean "any actions or efforts undertaken in a good faith effort to diagnose or treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions." *Id.* at 778.

In support of her contention that the issue of "emergency care" should have been included in the jury charge, Mrs. Arredondo relies on the definition of "emergency medical care," which excludes care or treatment after the patient is stabilized,[3] and argues the evidence from his treatment on January 16 at the BASMC

---

[3] "'Emergency medical care' . . . does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency. CIV. PRAC. & REM§ 74.001(7).

–7–

emergency department shows, or at least raises a fact issue, as to whether her husband was "not triaged as urgent and not provided immediate medical attention to diagnose or treat a suspected emergency condition" and that "the healthcare providers perceived Daniel as stable from the outset and did not believe that the absence of immediate medical attention would result in serious jeopardy to his health." She further complains that "they never considered an emergent condition."[4] Mrs. Arredondo urges there was conflicting evidence as to whether her husband had signs or symptoms of infection and experts' opinions as to whether severe pain alone could be a sign of sepsis. She argues these conflicts were for the jury to resolve in order to determine whether Mr. Arredondo received "emergency medical care."

Appellees respond the statute itself includes "the sudden onset of . . . severe pain" as a circumstance sufficient to meet the second element of "emergency medical care." *See* CIV. PRAC. & REM. § 74.001(7). We agree. Mr. Arredondo went to the emergency department after experiencing severe pain that came upon him suddenly. Even assuming the statute's applicability could be posed as a question of

---

[4] She relies on evidence that:
- Mr. Arredondo was categorized as "require[s] in depth evaluation, but stable" by the first nurse who saw him,
- the result of his sepsis screen was negative,
- his vital signs were stable on arrival and throughout his visit to the emergency department,
- his medical record from his visit at the emergency department contained no signs or symptoms of infection, such as redness or swelling or fever,
- the pain he described as "10/10" was viewed by the physician's assistant as a subjective factor and unaccompanied by any objective factor, such as unstable or abnormal vital signs,
- following triage, Mr. Arredondo was returned to the waiting area without further care or treatment for approximately one and one-half hours, and
- Mr. Baird's differential diagnosis was a spasm or sprain.

fact rather than law, no conflicts exist in the evidence for the jury to resolve that the circumstances here establish the second element. *See, e.g.*, *Turner*, 325 S.W.3d at 779 ("Here, K.M.T. went to the emergency department after experiencing 'sudden' and 'severe' pain.").

As for the first element of "bona fide emergency services," Mrs. Arredondo's arguments are similar to those made in *Turner v. Franklin*: "section 74.153 applies only when a physician diagnoses a condition as an emergency and treats it accordingly." *See id.* at 778–79. We rejected that argument there and here as well. In *Turner*, the patient went to the emergency department after experiencing "sudden" and "severe" pain. *See id.* at 779. One of the possible diagnoses of his condition would, if correct, result in the loss of a body part. *See id.* The evidence in that case showed the health care providers considered that diagnosis but the plaintiffs argued they deviated from the standard of care—not by conducting or failing to conduct a proper test—but by improperly interpreting its results. *See id.*

As we concluded in *Turner*, "emergency medical care" encompasses diagnosing a patient under the circumstances and during the time period outlined in section 74.001(7), regardless of whether the health care provided reached a diagnostic conclusion that the patient was suffering from a true emergency condition. As pointed out by Mrs. Arredondo, the nurse who first triaged Mr. Arredondo reviewed his vital signs for indications of sepsis. Although there is conflicting evidence whether his severe pain *alone* could have indicated or should

have alerted the appellees to the presence of sepsis, and there is conflicting evidence as to whether he was exhibiting any other indications of sepsis at the time he was examined in the emergency department, there is no conflict in the evidence that Mr. Arredondo was indeed screened for sepsis or that sepsis is an infection affecting one or more internal organs, which can result in death, as tragically it did in this case. Thus, the record establishes the health care providers who examined him considered sepsis as a possible diagnosis, but rejected it. Therefore, we conclude there was no conflict in the operative facts for the jury to resolve regarding whether appellees provided "emergency medical care."

Accordingly, we cannot conclude the trial court abused its discretion in refusing to submit the requested instruction, and we overrule Mrs. Arredondo's first issue.

## II. The Trial Court Did Not Abuse Its Discretion in the Exclusion of Evidence

In her second issue, Mrs. Arredondo argues the trial court abused its discretion by excluding evidence that appellees BHCS and BASMC were required, but failed, to have a prescriptive authority agreement ("PAA") for Mr. Baird to practice as a physician's assistant treating Mr. Arredondo in the BASMC emergency department. Mrs. Arredondo argues that without that PAA, Mr. Baird lacked the authority to treat Mr. Arredondo and that appellees' failure to have a PAA violated the standard of care and evidenced negligence and gross negligence.

Prior to the first trial, the trial court signed an order granting appellees' motion in limine, which described the judge's verbal admonishment to Mrs. Arredondo that the subject of PAAs would not be submitted to or discussed in front of the jury. That ruling remained in effect during the second trial as well.

We review a trial court' exclusion of evidence for abuse of discretion. *See JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018). The administrative code defines a PAA as

> An agreement entered into by a physician and an advanced practice registered nurse or physician assistant through which the physician delegates to the advanced practice registered nurse or physician assistant the act of prescribing or ordering a drug or device. Prescriptive authority agreements are required for the delegation of the act of prescribing or ordering a drug or device in all practice settings, with the exception of a facility-based practice, pursuant to §157.054 of the Act.

22 TEX. ADMIN. CODE § 185.2(17).

According to Mrs. Arredondo, evidence of the PAA would have established a lack of proper supervision of Mr. Baird. BHCS and BASMC respond that evidence of the existence or absence of a PAA is irrelevant to her claim, which is that her husband was misdiagnosed with muscle spasms, instead of sepsis, not Mr. Baird's prescription of drugs or devices. *See id.* We agree. We cannot conclude the trial court abused its discretion by excluding evidence of whether a PAA existed at the time Mr. Arredondo was treated. Accordingly, we overrule Mrs. Arredondo's second issue.

–11–

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

200087F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

ANGELINA ARREDONDO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DANIEL CANALES ARREDONDO, DECEASED, AND NEXT FRIEND OF LEIA ARREDONDO, INDIVIDUALLY, Appellant

No. 05-20-00087-CV    V.

ALL SAINTS MEDICAL CENTER D/B/A BAYLOR SCOTT & WHITE ALL SAINTS MEDICAL CENTER-FORT WORTH; AND BAYLOR HEALTH CARE SYSTEM, D/B/A BAYLOR SCOTT & WHITE HEALTH, Appellees

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-16-07257. Opinion delivered by Justice Schenck. Chief Justice Burns and Justice Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees ALL SAINTS MEDICAL CENTER D/B/A BAYLOR SCOTT & WHITE ALL SAINTS MEDICAL CENTER-FORT WORTH; AND BAYLOR HEALTH CARE SYSTEM, D/B/A BAYLOR SCOTT & WHITE HEALTH recover their costs of this appeal from appellant ANGELINA ARREDONDO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE

–13–

ESTATE OF DANIEL CANALES ARREDONDO, DECEASED, AND NEXT FRIEND OF LEIA ARREDONDO, INDIVIDUALLY.

Judgment entered this 13th day of January 2022.